[File No. 6088.]

GEORGE OLIVIER and Carl T. Uleberg, Co-partners as Olivier & Uleberg, Respondents, v. SWEN OLSON and I. E. Orheim, Co-partners as Olson & Orheim, Appellants.

(248 N. W. 181.)

Opinion filed April 15, 1933.

*Harry E. Dickinson* and *Geo. A. McGee,* for appellants.
*B. H. Bradford,* for respondents.

CHRISTIANSON, J. Plaintiffs brought this action to recover the sum of $498.69 claimed to be due them from the defendants on account. The defendants answered denying liability, and by way of counterclaim asserted that they had overpaid the plaintiffs by mistake in the sum of $164.16, and demanded judgment against the plaintiffs for that sum. The case was tried to a jury and resulted in a verdict in favor of the plaintiffs for the full amount demanded in their complaint and defendants have appealed.

The defendants are general building contractors. The plaintiffs are engaged in sheet metal and roofing work. Business relations have existed between the plaintiffs and the defendants for some time. When the defendants contracted for the construction of a building it was their practice to sublet the sheet metal and roofing work, and apparently such work, in many instances, had been sublet to the plaintiffs. The present action, which is based on account, really involves a dispute arising out of two contracts. In 1929 the defendants contracted to construct a building in the city of Minot known as the Ellison Building. In conformity with their practice they asked for and obtained bids for the roofing and sheet metal work. Five different bids were submitted. The low bid was submitted by the Ray Roofing Company of St. Paul, Minnesota. This company submitted a bid of $1,572. The plaintiffs also submitted a bid for approximately $1,800. Later a change was made in the roof of the building, which resulted in a reduction of $420, in each of the bids submitted. The plaintiffs were awarded the sub-contract and did the work and charged the defendants

$1,344. It is undisputed that after the bids of the sub-contractors had been submitted some discussion was had between the plaintiffs and the defendants, but there is a square conflict as to what was said. The defendants claim that the plaintiffs agreed to do the work for the amount of the low bid, namely, $1,152. The plaintiffs, on the other hand, deny that this was the agreement and claim that they agreed to install a certain skylight at cost and also to make certain reductions in their original bid. The plaintiffs testify that the sum of $1,344 was arrived at by averaging all the five bids, that is, the amounts of the five bids were added and the total sum divided by five, which it is said resulted in the amount that the plaintiffs charged the defendants for the work.

In March, 1929, the defendants were awarded the general contract for construction of the Ward county courthouse. They invited sub-contractors to submit bids to them for the sheet metal and roofing work on such building. Several bids were submitted. The plaintiffs submitted a written bid of $4,960 for the roofing and sheet metal work, with the stipulation that if Barrett's Twenty Year roofing were used that an additional sum of $230 should be added, making a total sum of $5,190. It is undisputed that Barrett's Twenty Year Roofing was used, so that the amount for which they agreed to do the work according to plaintiffs' written bid was $5,190. The bid submitted by the plaintiffs was not the low bid. Another firm submitted a bid of $4,719, or $471 lower than plaintiffs' bid. The defendant Orheim testified that in preparing the bid for the general contract for the construction of the courthouse the defendants used the lowest bids that had been submitted to them by the different sub-bidders, including the lowest bid submitted for the sheet metal and roofing work.

After the bids of the defendants, and other bidders for the general contract for the construction of the courthouse, had been submitted to the county commissioners and while such bids were under consideration the defendant Orheim and the plaintiff Uleberg met at the offices of the defendants in Minot, and some discussion was had between them as regards the sub-contract for the sheet metal and roofing work, and concerning the bids that had been submitted to the defendants by the plaintiffs and the other bidders for that particular sub-contract. Both the plaintiff Uleberg and the defendant Orheim testified that they met

pursuant to a telephone call; that the defendant Orheim had telephoned to the plaintiffs. They agree that a conversation was had as regards the proposed sub-contract for sheet metal and roofing work, and the bids that had been received by the defendants for such work; but there is a square conflict in their testimony as to what was said and what agreement was made by the parties at that time.

The plaintiff Uleberg testified:

"Q. At that time what did Mr. Orheim say to you, and what did you say to him? Was that after this proposal had been submitted? A. That was after the proposal had been submitted. Q. What did you say to Mr. Orheim, and what did Mr. Orheim say to you at that time? A. Mr. Orheim says, 'we have a bid that is lower than yours.' Q. And what did you say? A. Well, I said we would like to do the work, but we didn't want the job at a cut price. Q. What did he say? A. He said we are going to use you, we are going to use you, and we are having quite a struggle to get the job, quite a time to get the job, and he asked that we get out and see what we could do for him in the way of helping them get the job. Q. Was there any other conversation at that time that you remember? A. No, there wasn't anything else. Q. Did he mention any bid by a firm known as Nees Brothers? A. He said he had a lower bid, he didn't mention any amounts. Q. Were any persons named in connection with it? A. No. Q. Did he show you any bids? A. No."

The defendant Orheim testified:

"Q. What was said between you with reference to this bid? A. I told him (Uleberg), the architect had asked us for a list of sub-bidders we would use in case we was awarded the bid for the Court House. I asked him if he knew he was bidding quite a bit of money on the job, and he said he knew about it. Q. At that time, Mr. Orheim, you may state whether or not you had in your possession the Defendants' Exhibit (D), from Nees Brothers? A. Yes. Q. And at that time did you have any talk with Mr. Uleberg with reference to the amount of that bid? A. Yes. Q. Well, what was said? A. I asked him how it could be possible that those fellows could come up from Minnesota and beat them about ten per cent on their bid and come to Minot and expect to make any money, and he said, that bid is so cheap you can make very little or no money on it at that price. . . . Q. Now

what else, if anything, was said there between you and Uleberg? A. Well, after he had said that, that the bid was so cheap there was very little or no money could be made at that price, well, he said, that is a condition we will have to contend with, and I said, what I am interested in is do you want the work at Nees Brothers' figure. Q. What did he say? A. Yes, we would like to do the work. Q. What did you do with respect to the sub-contract after that? A. Why, I answered him, I said, all right, we will use your name on the list of sub-bidders. Q. You may state whether or not you did use their name? A. We did, yes, sir. Q. Did you state on that list the amount of the sub-contract with it? A. No. The architect got that list, he was up in the office and checked that over, and he marked down the list of sub-bidders, and checked the sub-bidder as he marked them down."

The plaintiffs offered in evidence the proceedings of the county commissioners of Ward county on March 14, 1929, as recorded in the minutes of the official proceedings of said board and as published in the official newspaper. The proceedings contained a resolution adopted by the board of county commissioners accepting the bid of the defendants Olson & Orheim for the construction of the courthouse. The resolution is quite extended. In certain instances it refers to changes in the proposed structure and specifies the amount of the "basic bid" and the amount of the sum to be paid the contractors as regards changes in such particular item. The resolution also contains this provision:

"Certain sub-contracts to be awarded with no change in basic bid as follows:

"Reinforcing Steel—Kelman Steel Company, St. Paul.

"Structural Steel, Miscellaneous Iron and Ornamental Iron to the Crown Iron Works, Minneapolis.

"Bronze Doors to the Art Metal Construction Company of Jamestown, N. Y.

"Roofing & Sheet Metal Work to Olivier & Uleberg, of Minot.

"Glass & Glazing to the Minot Sash & Door Company, of Minot."

The minutes of the proceedings of the county commissioners as published in the official newspaper contained not only the resolution alluded to, but a record of all the proceedings relating to the reception of bids and the award of contracts incident to the construction of the new courthouse. The proceedings included, among other things, a

tabulated list of the bids that had been received by the board of county commissioners for the general construction contract as well as for certain specified sub-contracts, such as heating, ventilating, electric work, etc. Such tabulated list of bids set forth the names of the bidders and the amount of their respective bids. The particular work in question here, that is, the sheet metal and roofing work was not an item for which the county commissioners had called for and received separate bids so the proceedings did not show the names of the bidders or the amount of the bids submitted either by the plaintiffs or others for that particular work. The sheet metal and roofing work was an item included in the general construction contract and consequently whatever bids were submitted for that work were not submitted to the board of county commissioners, but were submitted to the contractors who had made bids for the general construction contract. When the record of the proceedings of the county commissioners and the published account thereof in the official newspaper were offered in evidence the defendants objected to their admission, on the grounds, among others, that the same were irrelevant, incompetent and immaterial, had no bearing on the lawsuit and were not binding upon the defendants. The objection was overruled and the published report of the minutes of the county commissioners' proceedings was received in evidence. This ruling is assigned as error on this appeal.

The minutes of the county commissioners' proceedings disclose that twelve different firms submitted bids on the general construction contract. One firm submitted a bid wherein the bid on the "main proposal" was some $3,700 less than the bid submitted by the defendants. During the cross-examination of the defendant Orheim, plaintiffs' counsel was permitted to ask whether the reason that the county commissioners allowed defendants some $4,000 more for their contract than the next bidder was with the express understanding that the defendants were to employ local sub-contractors. The defendant answered that he did not know. Error is also assigned upon these rulings.

Plaintiffs' counsel contends that the record of the minutes of the proceedings of the county commissioners was admissible; that it tended to corroborate Uleberg's testimony that the plaintiffs were awarded the sub-contract for the sheet metal and roofing work on the terms stated in the written bid which the plaintiffs had submitted. It is argued

that when the county commissioners stated in the resolution ·that the sub-contract for sheet metal and roofing work was to be awarded to the plaintiffs with no change in "basic bid" it constituted a provision by the county commissioners not only that the plaintiffs must be awarded the sub-contract for the sheet metal and roofing work but that they must be paid for such work the sum specified in their written bid. In short, it was, and is, the contention of plaintiffs' counsel that the fact that the county commissioners awarded the general construction contract to the defendants over a lower bid and the further fact that the county commissioners in their resolution accepting defendants' bid stated that the sub-contract for the sheet metal and roofing work was to be awarded to the plaintiffs directly tend to show that the county commissioners intended to provide and did provide not only that the defendants must award to the plaintiffs the sub-contract for sheet metal and roofing work, but that they must pay them for such work the sum stated in the written bid which the plaintiffs had submitted to the defendants.

After plaintiffs' counsel had offered the resolution of the Board of County Commissioners in evidence and while its admissibility was being considered by the court, plaintiffs' counsel said: "Our position is this, this was a clear acceptance of (by) the Board of County Commissioners of Olson and Orheims' bid, on condition they would employ those sub-contractors without any change in their basic bid." In his brief in this court plaintiffs' counsel advances the same contention. He says:

"The basic bid of Olivier and Uleberg was $4,960. The board of county commissioners in accepting the bid of Olson and Orheim and awarding them the contract specifically stipulated as a part of such acceptance that Olson and Orheim should use the firm of Olivier and Uleberg with reference to the sheet metal and roofing, and in the resolution stipulated in immediate conjunction therewith that there should be no change in the basic bid. . . .

"In any event the resolution of the board of county commissioners constituted and was an offer to Olson and Orheim, and when the latter entered into the contract pursuant to such resolution the resolution was adopted and became a part of that contract; and Olson and Orheim were by that resolution and their contract compelled to employ Olivier

and Uleberg as sub-contractors with reference to the sheet metal and roofing work specified. That resolution provided that Olivier and Uleberg were to be employed as aforesaid without any change in the basic bid. The contention of the respondents in this matter is that the word basic bid in this resolution referred to the basic bid of Olivier and Uleberg. The appellants contend otherwise, and the various interpretations contended for were argued to the jury by both parties."

He also says:

"Exhibit Eight (8) (the published report of county commissioners' proceedings) . . . was not offered for the purpose of proving the contract between the plaintiffs and the defendants but was offered as a fact or circumstance corroborating the testimony given as to such contract and for the further purpose of conclusively proving to the jury that the testimony of Mr. Orheim with reference to the inviolate custom of accepting only the lowest bid was at least subject to many exceptions. Thus Mr. Orheim testified that it was their custom to receive bids from sub-contractors and to base their own bid for the whole contract on the lowest proposals thus received. Exhibit Eight (8) demonstrates clearly that the county commissioners in accepting the bid of Olson and Orheim were not governed by this principle; that Olson and Orheim were awarded the contract on this Court House job at a figure much in excess of the lowest bid; and that they were awarded the contract on the express condition that they would employ among other sub-contractors the plaintiffs in this action."

This indicates the meaning and the probative force that the plaintiffs attributed to the resolution, and to the published report of the minutes of the proceedings of the county commissioners, and the reliance that they placed thereon in the trial court.

If the resolution had the meaning for which plaintiffs' counsel contends, it would seem that there would have been no issue to submit to the jury as regards the amount to be paid to the plaintiffs for the sheet metal and roofing work. If the contract between the county commissioners and the defendants provided that the plaintiffs were to perform the sheet metal and roofing work and receive as compensation therefor the amount specified in their written bid submitted to the defendants, then obviously there was no question of fact at issue as regards the amount plaintiffs were entitled to recover for their work on the court-

house, for there is no dispute as to the terms of the written bid which the plaintiffs submitted to the defendants, neither is there any dispute as to the payments that defendants have made. So, if the resolution had the effect for which plaintiffs contend, then obviously the plaintiffs would be entitled as a matter of law to recover the amount they claimed for the courthouse job.

We are unable to see, however, either that the resolution or the minutes of the proceedings of the board of county commissioners were admissible in evidence, or, if admissible, that they had the meaning or the probative force for which plaintiffs contend. It is not shown that the defendants were informed, or had any knowledge, of the contents of the resolution. There is no claim that the resolution, or the provision in the resolution on which plaintiffs place reliance here was embodied in the written contract subsequently entered into between the defendants and the board of county commissioners. But even though the resolution were admissible we are all agreed that it did not have the meaning for which plaintiffs contend. The undisputed evidence shows that the defendants, at the request of the architect, furnished him a list of the concerns to whom sub-contracts would be awarded in the event the defendants were awarded the general contract and that the defendants, among such proposed sub-contractors, listed the names of the plaintiffs and that accordingly they were included in the list submitted to the county commissioners as concerns to whom defendants would award certain specified sub-contracts if they were awarded the general construction contract. There was no proof that the county commissioners in any manner suggested or directed that the defendants award the sub-contract to the plaintiffs or that the county commissioners would have refrained from awarding the contract to the defendants if they had listed some other sub-contractor for the sheet metal and roofing work; and it hardly should be assumed that the county commissioners were so derelict in their official duties as to pay to the defendants a sum in excess of some other responsible bidder merely to assure that the plaintiffs were awarded a certain sub-contract at their own figure. The very resolution awarding the contract to the defendants specifically recites that after consideration of the bids and "after this board has fully satisfied itself as to the lowest responsible bidder" the general contract is awarded to the defendants. There is no dispute

that the plaintiffs were awarded the sub-contract by the defendants, but the dispute is as regards the terms of such contract. There is not the slightest evidence that the board of county commissioners either knew or cared what those terms were. We do not have before us the bid submitted by the defendants. But according to the testimony of the defendant Orheim their bid was based upon the lowest bid that defendants had received for sheet metal and roofing work, which was not the bid of the plaintiffs. When the resolution speaks of basic bid it cannot be assumed that it had reference to any bid other than the bid submitted by the defendants. So far as the evidence discloses that is the only bid that the county commissioners saw. Whether that bid indicated the amount which it was contemplated would be expended by the general contractors, or paid to their sub-contractors, for the sheet metal and roofing work; and whether if an amount was stated it was, as Orheim testified, the amount of the lowest bid which they had received for sheet metal and roofing work, or some other amount, we have no means of knowing and the resolution does not purport to state.

We are also agreed that the plaintiffs were not entitled to introduce in evidence the minutes of the proceedings of the county commissioners or other evidence tending to show that the bid of the defendants was not in fact the lowest bid. The record does not bear out the contention of the plaintiffs that the defendant Orheim had testified that contracts were always let to the lowest bidder. What Orheim did testify was that in submitting bids for a general contract, he and his firm always based such bid upon the lowest bids received by them from sub-contractors on the various parts of the work for which sub-contracts were to be let. What the board of county commissioners of Ward County did in letting the contract in this particular case could have no logical tendency to negative the fact testified to by Orheim or to impeach his testimony.

We are agreed that the admission in evidence of the minutes of the proceedings of the county commissioners constituted prejudicial error and necessitates a reversal of the judgment. The judgment appealed from must be, and is, reversed and the cause is remanded for a new trial.

NUESSLE, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.